WELZ & ZERWECK, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24471. Promulgated May 16, 1928.

*L. L. Hamby, Esq.,* for the petitioner.
*V. J. Heffernan, Esq.,* for the respondent.

1420

OPINION.

SMITH: The petitioner states that the sole issue herein is whether the respondent at the time he issued the notice of deficiency dated December 22, 1926, had any legal authority to assess or the collector had any legal authority to collect the taxes for 1918 and 1919 against the petitioner. Counsel for the petitioner argued at the hearing that that portion of the 1919 deficiency already assessed is now barred of

collection. That issue, however, he does not now ask the Board to pass upon since he stated " we are able to take care of ourselves on that." The sole question which the Board is asked to rule upon is, Is the unassessed portion of the 1918 and 1919 deficiencies now barred of assessment?

The statutory provisions involved are section 277(a)(3), section 278(c), section 278(d), section 277(b), section 274(a), section 283(a) and section 283(e) of the Revenue Act of 1926, and section 1000 of the Revenue Act of 1926, amending section 907(a) of the Revenue Act of 1924.

The petitioner claims in substance (1) that the execution of the alleged agreement of June 10, 1925, by its secretary was requested and procured upon specific representations made by the respondent or his agents to the said officer of the petitioner that it should not be effectual for the purpose of assessing any further taxes against petitioner for the said years; (2) that the said agreement is wholly void and did not confer any legal authority upon the respondent to assess such further taxes against the petitioner for 1918 and 1919 because it was not executed nor entered into until subsequent to the expiration of five years from the date of filing the return and there was no consideration therefor; and (3) that the said agreement was not the agreement of petitioner because it was not executed by any person authorized to bind the petitioner in respect to the assessment of further taxes against it for the years 1918 and 1919.

The deficiencies determined by the respondent and covered by the deficiency notice sent to the petitioner on December 22, 1926, are for the calendar years 1918 and 1919. They are the respondent's computations of tax liabilities imposed by the Revenue Act of 1918. Their assessment and collection are subject to the limitations imposed by the Revenue Act of 1926.

The Commissioner had five years after the return was filed within which to make an assessment of additional income and profits tax. The Revenue Act of 1926 does not provide a certain period of five years within which assessments for 1918 and 1919 must be made. The five-year period provided by section 277(a) of the Act is operative in those cases only in which the taxpayer and the Commissioner have not agreed in writing under the provisions of section 278(c) upon some different period of limitation.

The record of this action shows that the petitioner filed with the respondent a series of consents extending the statutory period within which assessments might be made against it for the years 1918 and 1919. No question is raised by the petitioner but that the consent executed on June 10, 1925, was a valid consent. It was in full force and effect at a time when certain agents of the Commissioner requested further consents with respect to the years 1918 and 1919

and prior years in October, 1925. The petitioner contends that the agents represented to their secretary, the corporate officer who, for the petitioner, executed the consent of October 19, 1925, that consents were not desired for the years 1918 and 1919 but that inasmuch as the agents did not have with them sufficient blanks to prepare a consent for each year one blanket consent would be given which would enable the Commissioner to straighten out deficiencies for all years 1909 to 1921, inclusive. It is further contended that the agents represented that they were recommending to the Commissioner that the petitioner's claims for the years 1918 and 1919 be allowed and that they would undoubtedly be allowed and that the taxes assessed against them for those years would be abated. The consent bearing date of October 19, 1925, makes no reference to such an understanding. It does not except from the period of years covered by the consent the years 1918 and 1919, which could easily have been excepted if the agents or the petitioner had desired to except thereto. A properly executed instrument in writing must be considered to express the intent of the parties signing the same.

It is a well established rule of the common law, which has been embodied in statutes in a number of states, that when any * * * contract, agreement, or undertaking has been reduced to writing, and is evidenced by a document, or series of documents, the contents of such documents cannot be contradicted, altered, added to or varied by parol or extrinsic evidence. (22 C. J. 1070.)

The authorities giving expression to the principle are so many as to prohibit any attempt at selective citation. See *Slater* v. *Van Der Hoogt*, 23 App. D. C. 417; *Knight* v. *W. T. Walker Brick Co.*, 23 App. D. C. 519; *Bieber* v. *Gans*, 24 App. D. C. 517; *Brawley* v. *United States*, 96 U. S. 168; *Willard* v. *Tayloe*, 8 Wall. 557. In *Brown* v. *Spofford*, 95 U. S. 474, the Supreme Court said:

In the absence of fraud, accident, or mistake *the rule is the same in equity as at law*, that *parol evidence of an oral agreement* alleged to have been made at the time of drawing, making or indorsing a bill or note *cannot be permitted to vary, qualify, or contradict, or to add to or subtract from, the absolute terms of the written contract*. *Forsyth* v. *Kimball*, 91 U. S. 2. (Italics supplied.)

See also *Converse & Co.*, 1 B. T. A. 742; *J. W. Solof*, 1 B. T. A. 776; *Arthur B. Grover*, 3 B. T. A. 508.

The findings of fact state the circumstances under which the consent of October 19, 1925, was given. We think, however, that that evidence is not competent to vary the terms of the consent given. After the receipt of the consent of October 19, 1925, the respondent made certain adjustments in the petitioner's tax liability for the years 1918 and 1919. He canceled certain portions of the assessments outstanding against the petitioner.

The consent of October 19, 1925, was executed on behalf of the petitioner by Benjamin H. Roth, then secretary of the corporation.

In support of its contention that Roth had no authority to execute this consent on behalf of the petitioner, it caused to be read into the record extracts from the by-laws of the corporation, adopted in 1897. The substance of those provisions is shown in the findings of fact.

The evidence adduced at the hearing shows that Roth had charge of its income-tax affairs in Washington. The board of directors was informed in detail as to the progress of Roth's negotiations. Roth advised them in detail as to the steps taken by him on behalf of the petitioner. Those detailed steps included the execution of the consent of October 19, 1925, as well as the consents executed in April, 1924, in April, 1925, and in June, 1925. The board of directors had been informed in detail in respect to those acts on the part of Roth. The board of directors did not repudiate the acts of its secretary with respect to the authority he had assumed to exercise prior to the receipt by the petitioner of the notice of a deficiency upon which this proceeding is based.

The contention of the petitioner that express authority to execute the consent of October 19, 1925, had been withheld from Roth as secretary of the corporation is contrary to the facts in the case. But even if Roth had not been expressly directed by the board of directors to take charge of the corporation's tax matters, still it would be conclusively bound by the acts of Roth under the circumstances here prevailing.

Mr. Justice Story, speaking for the court in *Bank* v. *Dandridge*, 12 Wheat. 64, 70, said:

If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful and the delegated authority will be presumed.

In *Mining Company* v. *Anglo-California Bank*, 104 U. S. 192, 194, the court, speaking through Mr. Justice Harlan, said:

And it is settled law that the existence of such authority in subordinate officers may, in the absence of express statutory prohibition, be shown otherwise than by the official record of the proceedings of the board. It may be established by proof of the course of business between the parties themselves; by the usages and practice which the company may have permitted to grow up in its business; and by the knowledge which the board, charged with the duty of controlling and conducting the transactions and property of the corporation, had, or must be presumed to have had, of the acts and doings of its subordinates in and about the affairs of the corporation.

In *Sun Printing Co.* v. *Moore*, 183 U. S. 642, 650, Mr. Justice White, speaking for the court, said:

As, therefore, the trustees of The Sun Association must be presumed to have exercised a supervision over the business of the corporation, they are to be charged with knowledge of the extent of the power usually exerted by its man-

1424

aging editor, and must be held to have acquiesced in the possession by him of such authority, even though they had not expressly delegated it to him.

In *Hall* v. *Ochs*, 34 App. Div. 103; 54 N. Y. S. 4, the court quoted with approval the rule advanced by Mr. Justice Story, quoted above, and said:

But the jury have found that the defendant's president acted within the scope of his apparent authority, and it is settled doctrine in America that the appointment of an agent may be inferred and implied from the adoption or recognition of his acts by the trustees and directors, or by the corporation.

In *Huntington* v. *Attrill*, 118 N. Y. 365; 23 N. E. 544, 548, the court said:

In response to the request to charge that, before a verdict could be found for the plaintiff, the jury must be satisfied by affirmative proof that Smith was authorized to indorse the name of the company on the note by prior resolution of the executive committee or by the board of directors, or by ratification by resolution or some equivalent act of such committee or board, the court charged substantially that the jury, to reach such result, must find either *prior authority or subsequent ratification*, and that it *could be evidenced by general course of business as well as resolution*. There was no error in this charge. (Italics ours.)

In *Curran* v. *Delaware & O. R. Co.*, 138 N. Y. 480; 34 N. E. 201, the defendant corporation had the right under a certain contract to suspend certain operations for a reasonable period of time. One Dimmick, secretary of the corporation, directed a protracted suspension, and the corporation was held liable in damages. The court said:

The actual authority conferred by the corporation upon Dimmick does not appear. But his authority may be implied from the power he had been accustomed to exercise without dissent of the company, and presumably with its acquiescence.

The New York court repeated this rule in *Chambers* v. *Lancaster*, 160 N. Y. 342; 54 N. E. 707, a case in which it was urged "that there was no proof that the president of the company had any authority to make such an agreement binding the company."

From the decisions cited above, as well as from a host of other authorities too voluminous to admit of citation, it is established beyond dispute as a settled rule of law that a corporation may not, whether within Federal jurisdiction or within the State of New York, repudiate the authority of its officer acting on its behalf and in its name, and with the knowledge and approval and under the instructions of its board of directors.

An order will be entered denying the motion of petitioner for judgment upon the basis that the assessment and collection of additional taxes for 1918 and 1919 is barred by the statute of limitations and the proceeding will be restored to the calendar for hearing upon its merits.