UNITED STATES *v.* SOLOMON, ADMINISTRATRIX.

4-9544                                    241 S. W. 2d 369

Opinion delivered July 9, 1951.

*Holmes Baldridge, James T. Gooch, Gerland P. Patten, Samuel D. Slade* and *Arthur W. Murphy,* for appellant.

GRIFFIN SMITH, Chief Justice. The apeal is from an order of the Probate Court disallowing the Government's claim against the estate of Lafe Solomon. A balance of $47.56 plus interest is asked. Allowance was rejected by Retta G. Solomon, administratrix, followed by appropriate notice and a court hearing. No reason for rejecting the demand was given.

Solomon owned a farm in Lee County near Brickeys. On March 10, 1947, his tenant Hays applied for Federal Crop Insurance, representing that he had a share in 36 acres that were to be planted to cotton. The Insurance Corporation is an agency of the U. S. Department of Agriculture. 52 Stat. 72, 7 U. S. C., § 1503.

The application was signed by Hays and Solomon. This provision was in the print subscribed to: "The undersigned co-signer [Solomon] . . . is a surety for the payment of the premium due the first crop year of the contract." The applicable regulations permit payment in cash or cotton. For Arkansas the due date in 1947 was September 30. The regulations have the force of law in matters affecting expressly authorized administrative procedure where the details would be too cumbersome for congressional treatment. The application contains a paragraph providing that the contract shall not be waived or changed except as authorized by a duly acting officer or representative of the Corporation.

Appellee has not filed a brief, nor was the administratrix represented when the case was presented by oral argument. Appellant's brief assumes that the claim was disallowed on the grounds of estoppel or *laches,* based

upon Hays' conduct in first inquiring what the premium would be, then procuring Solomon's check for $239.11, the amount asked, and delivering it to the agency. The check is dated Oct. 17, 1947, and appears to have been deposited November 3d. It is payable to the Treasurer of the United States. W. E. Bowden, county administrative officer for the A. A. A., local administrative agency for the Insurance Corporation, testified that the check was received October 24th.

It was discovered at a substantially later date that the premium had been computed on lint cotton only, whereas the application was for lint plus seed. The undisputed testimony is that the lint factor was 729 pounds for which settlement was made, whereas the correct equation would have been 729 plus 20% (the later representing insurance on seed),—a total of 875 pounds of lint or an equivalent at the prevailing commodity price Sept. 30, 1947. It is stated in appellant's brief that when Hays' attention was called to the error he claimed to have paid Solomon, but there is no testimony to this effect. Quite clearly all parties were mistaken. The premium correctly computed (allowing for mathematical errors of a few cents in comparing the contract with testimony) was $287, and the contract calls for interest at the rate of half of one percent per month.

It is conceded that the application does not "contain a place" where the premium can be computed so that anyone other than a representative of the Insurance Corporation can determine what the amount is. This, however, does not affect validity of the promise to pay. Dates when notices of the deficiency were sent, or whether Solomon was informed of the error,—neither is satisfactorily shown. There is no contention that the State Office or Board of Directors of the Corporation had authorized county administrative agents to vary the regulations.

By virtue of Title 31, ch. 6, § 191, U. S. C., debts due the United States are entitled to priority in payment from assets of a decedent's estate.

It was held in *United States* v. *Summerlin,* 310 U. S. 414, 60 S. Ct. 1019, 84 L. Ed. 1283, that the Federal gov-

ernment "is not bound by statutes of limitation" nor is it "subject to the defense of *laches* in enforcing its rights," and "The same rule applies whether the United States brings its suit in its own courts or in a state court," citing *Davis* v. *Corona Coal Co.*, 265 U. S. 219, 44 S. Ct. 552, 68 L. Ed. 987.

Mr. Justice STONE, in writing the court's opinion in *Royal Indemnity Co.* v. *United States*, 313 U. S. 289, 61 S. Ct. 995, 85 L. Ed. 1361, said: "Power to release or otherwise dispose of the rights and property of the United States is lodged in Congress by the Constitution. Art. IV, § 3, Cl. 2. Subordinate officers of the United States are without that power, save only as it has been conferred upon them by Act of Congress or is to be implied from other powers so granted."

In *Federal Crop Insurance Co.* v. *Merrill*, 332 U. S. 380, 68 S. Ct. 1, 92 L. Ed. 10 (where the result was such as to call for three dissents and the usual powerful expressions from Mr. Justice JACKSON),[1] it was held that the Federal Crop Insurance Corporation is wholly governmental. Said Mr. Justice FRANKFURTER in the majority opinion: "It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional agencies or through corporate forms especially created for defined ends. . . . Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the

---

[1] In Judge Jackson's dissent he discussed the injustice resulting from the majority rule, saying: "I would hold [these governmental agencies] to the same fundamental principles of fair dealing that have been found essential in progressive states to prevent insurance from being an investment in disappointment."

bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though . . . the agent himself may have been unaware of the limitations upon his authority.''

With these explicit rules and higher decisions as guides, the conclusion is inescapable that the claim is (a) an obligation due the Government, (b) that it is not barred by limitation or *laches,* and (c) that the evidence forecloses any suggestion that the amount contended for is incorrect, or that the payment of $239.11 made in good faith discharged the debt.

Reversed, with directions to enter a judgment for the Government, including interest and cost.